IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **Eugene Volokh**, <br><br> *Plaintiff*, <br><br> v. <br><br> **Williamson County Archives & Museum;** <br> **Bradley Boshers**, Archives Director for the Williamson County Archives & Museum; <br> **Williamson County Circuit Court Clerk;** <br> **Debbie McMillan Barrett**, Circuit Court Clerk. <br><br> *Defendants*. | Case No.: 3:25-cv-00701 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## I. Introduction

American citizens enjoy a First Amendment right of access to judicial records that state and local governments may not restrict unless the restriction withstands constitutional scrutiny. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700 (6th Cir. 2002). The Tennessee Public Records Act ("TPRA") includes a provision that restricts access to public records, including judicial records, to residents of Tennessee. TENN. CODE ANN. § 10-7-503(a)(2)(A). The First Amendment is a fundamental right enjoyed by all Americans and cannot be abridged by a state statute based on an individual's state citizenship. Additionally, the Privileges and Immunities

1

Clause of the United State constitution prohibits states from burdening a fundamental right on the basis of state citizenship. Because the TPRA restricts rights guaranteed by the United States Constitution on the basis of state citizenship, it is unconstitutional.

On February 5 and March 5, 2025, Plaintiff Eugene Volokh, a California resident, was impermissibly denied access to public judicial records by Defendants because of his residency status. Defendants Williamson County Archives and Museum, Bradley Boshers, the Archives Director for Williamson County Archives and Museum, the Williamson County Circuit Court Clerk, and Debbie McMillan Barrett, the Williamson County Circuit Court Clerk, all acted "under color of state law" and thus must comply with the United States Constitution, the First Amendment, and the related common law "presumptive right of access to civil proceedings and judicial records." *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)); *see also Phillips v. Tangilag*, 14 F.4th 524, 532 (6th Cir. 2021) (concluding Section 1983 actions are available when the defendant's allegedly unconstitutional action was taken "under color of state law").

Mr. Volokh seeks a preliminary injunction ordering Defendants to provide the requested documents and comply with the First Amendment right of access to judicial records. In addition, Mr. Volokh seeks relief for Defendants' violations of the Privileges and Immunities Clause. The preliminary injunction should be granted because (1) Mr. Volokh is likely to succeed on the merits; (2) he will suffer irreparable harm from an ongoing violation of his constitutional rights in the absence of an injunction; (3) granting the injunction will not cause substantial harm to others; and (4) injunctive relief advances the public interest. *See Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

## II. Factual Background

Mr. Volokh is a respected First Amendment scholar conducting research at the Hoover Institution at Stanford University. Mr. Volokh's First Amendment research and practice cover a wide range of topics, with a particular focus on access to courts and harassment. Compl. ¶ 9.

The Williamson County Circuit Court Clerk is, by statute, required to file and enter all documents, pleadings, papers, and exhibits, and must "[k]eep the several dockets required by law in the respective courts, and keep a rule docket." Tenn. Code Ann. § 18-1-105; *see* Compl. ¶ 13. Debbie McMillian Barrett, in her official capacity as the Circuit Court Clerk, is responsible for maintaining judicial records, is proper custodian of the requested documents, and presumably maintains copies of the documents filed in Circuit Court. Compl. ¶ 14.

On February 4, 2025, pursuant to directions received from the Williamson County Circuit Court Clerk's office who previously denied Mr. Volokh's request for court records, Mr. Volokh submitted a request to the Williamson County Archives and Museum via email for records filed in *Garramone v. Curtsinger*, No. 22-CV-602, a case in Williamson County Circuit Court.[1] Compl. ¶¶ 20–24. The requested documents included the petition for the *ex parte* temporary order of protection, the *ex parte* order itself, the respondent's counterpetition, and any responses or replies as to the petition and the counter-petition. Compl. ¶ 21.

The Williamson County Archives and Museum is the purported custodian of the judicial records filed in Williamson County Circuit Court. Bradley Boshers, in his official capacity as the Archives Director for Williamson County Archives and Museum, administers and issues decisions on public records requests. Compl. ¶¶ 25–26. Mr. Boshers responded in

---

[1] In this case, one party requested an order of protection from the court against the opposing party based on activities the opposing party claimed were protected by the First Amendment. As a leading First Amendment scholar, especially within the context of harassment, Mr. Volokh requested documents from this case to assist his research.

his official capacity as the Archive Director and requested proof of Tennessee citizenship to process Mr. Volokh's request. Compl. ¶ 27. After learning that neither Mr. Volokh nor his assistant were Tennessee residents, Mr. Boshers denied the records request pursuant to the resident-only requirement set forth in the Tennessee Public Records Act ("TPRA"). TENN. CODE ANN. § 10-7-503(a)(2)(A). Compl. ¶ 28.

### III. Legal Standard

The Court should grant a preliminary injunction because all factors in the analysis favor preliminary relief in Mr. Volokh's favor. *See Caruso*, 569 F.3d at 265. Specifically, there is a sufficient "likelihood that [Mr. Volokh] will succeed on the merits," Mr. Volokh "will suffer irreparable harm" if the injunction is not granted, the requested relief will not "cause substantial harm to others," and the requested relief advances the public interest. *Id.* The considerations "are factors to be balanced, not prerequisites that must be met." *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)). Because Mr. Volokh raises a First Amendment issue, "the crucial inquiry is [] whether [Mr. Volokh] has demonstrated a likelihood of success on the merits" because "the issues of the public interest and harm to the respective parties largely depend on the constitutionality." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000), *overruled on other grounds by City of Littleton v. Z.J. Gifts D–4, L.L.C.*, 541 U.S. 774, 784 (2004)).

### IV. Argument

This Court should grant Mr. Volokh's motion for a preliminary injunction. Mr. Volokh is likely to succeed on the merits of both his First Amendment and Privileges and Immunities Clause claims. Under the "experience and logic" test, judicial records in civil proceedings are

presumptively open and thus protected by the First Amendment. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700 (6th Cir. 2002). The TPRA citizenship requirement fails strict scrutiny because it serves no compelling interest and is not narrowly tailored to achieve any legitimate governmental goal. *See Detroit Free Press*, 303 F.3d at 705.

In addition, Mr. Volokh is likely to prevail on his claim under the Privileges and Immunities Clause. The TPRA's citizenship requirement unconstitutionally discriminates against non-residents by denying them access to public judicial records—access that implicates core First Amendment interests that are fundamental to the nation as a whole.. Moreover, the Defendants have not identified any substantial governmental interest served by the citizenship requirement, nor have they shown that the restriction bears a close or substantial relationship to any legitimate objective. *Toomer v. Witsell*, 334 U.S. 385, 396–99 (1948).

Mr. Volokh satisfies all the remaining requirements for a preliminary injunction. Mr. Volokh will suffer irreparable harm in the form of an ongoing violation of his First Amendment rights without injunctive relief. *See Caruso*, 569 F.3d at 265. By contrast, granting access will impose minimal burdens on the state. *See id.* Any hypothetical harm to third parties is undercut by the existing access for Tennessee citizens. Finally, enjoining the enforcement of a law that violates the First Amendment serves the public interest. *See Hamilton's Bogarts*, 501 F.3d at 649. Protecting constitutional rights and ensuring equal access to public records promotes transparency, accountability, and the broader social good. *See Caruso*, 569 F.3d at 278.

### A. Mr. Volokh Is Likely to Succeed on the Merits of His Claim.

Mr. Volokh's constitutional claims are likely to succeed. Under the "experience and logic" test, judicial records in civil proceedings are presumed open and thus fall under First Amendment protection. *See Detroit Free Press*, 303 F.3d 681, 700 (6th Cir. 2002). The TPRA's

citizenship requirement cannot survive strict scrutiny because it does not advance a compelling interest and is not narrowly tailored to serve any legitimate governmental objective. *Id*. at 705. Similarly, TPRA's citizenship requirement also violates Mr. Volokh's rights under the Privileges and Immunities Clause because it impermissibly burdens Mr. Volokh's fundamental First Amendment right to access judicial records because of his citizenship status without a connection to a compelling state justification.

> **1. Because Access to Judicial Records Passes the Experience and Logic Test, and the Citizenship Requirement of TPRA Fails Strict Scrutiny, Mr. Volokh's First Amendment Claim Has a High Likelihood of Success.**

To determine if the First Amendment right of public access attaches to "government information," the information in question must satisfy the "experience and logic" test established by the United States Supreme Court in *Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555 (1980). *See Detroit Free Press*, 303 F.3d at 700.

The experience prong asks whether there is a "tradition of accessibility" that "implies the favorable judgment of experience." *Id.* (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982)). The Sixth Circuit has noted that "the open courtroom has been a fundamental feature of the American judicial system," acknowledging the long history and experience of public access American citizens have enjoyed and come to expect from the judiciary. *See Brown & Williamson Tobacco Corp.*, 710 F.2d at 1177. The Sixth Circuit held that shorter periods would be acceptable under sufficiently compelling logical reasons. *See Detroit Free Press*, 303 F.3d at 701.

The "logic" prong asks "whether public access plays a significant positive role in the function of the particular process." *Id.* at 703 (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8–9 (1986) (hereinafter *Press-Enterprise II*)). To evaluate this prong, the Sixth Circuit

has asked if public access "enhances the quality" of the government function in question. *See id.* at 703 (holding that "public access undoubtedly enhances the quality of deportation proceedings"); *see also Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179 (holding *Richmond Newspapers*' policy considerations apply to civil trials).

Here, experience and logic both support a finding that the First Amendment right of public access attaches to civil judicial records.

First, because the open courtroom is regarded as a "fundamental feature" of the American judicial system, the experience prong is satisfied. *See Brown & Williamson Tobacco Corp.*, 710 F.2d at 1177. The right to access records of public proceedings can be found as far back as 1372 when the English Parliament granted a statutory right to inspect court records. 46 Edw. 3 (1372); 2 Eng. Stat. at Large 191, 196-97 (1341-1411). The American colonies continued this practice as evidenced by the Massachusetts Body of Liberties of 1641, which declared "[e]very inhabitant of the Country shall have free liberty to search and review any rolls, records or registers of any Court or office." art. 48. This common-law right of access to judicial proceedings[2] was embraced by the Founders and early American courts. *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents.").

Second, public access to judicial records in civil proceedings "plays a significant positive role" and "enhances the quality" of judicial proceedings thus satisfying the "logic" prong. *See Detroit Free Press*, 303 F.3d at 703–04. The public right of access to civil court documents fosters legitimacy in the courts because "justice cannot function in the dark." *Brown &*

---

[2] The Supreme Court in *McBurney v. Young* held there was not a common-law right of access to *executive* records. 569 U.S. 221, 233 (2013). However, the common law right of judicial records is well-established.

*Williamson Tobacco Corp.*, 710 F.2d at 1178 (quoting *Richmond Newspapers*, 448 U.S. at 571) (internal quotations omitted). Without access to the judicial record, the public cannot "provide[] a check on courts" by analyzing and critiquing courts' reasoning. *Id.* Public access to court proceedings and records promotes "'true and accurate fact finding.'" *Id.* (quoting *Richmond Newspapers*, 448 U.S. at 596). Although the Supreme Court has not explicitly stated the First Amendment right of access applies to civil judicial proceedings and records, every circuit to consider the issue has concluded the right applies to both civil and criminal proceedings, including the Sixth Circuit. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020); *see also Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1069 (7th Cir. 2018), *cert. denied*, 140 S. Ct. 384 (2019) (mem.); *see also Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984); *see also Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179. The government information Mr. Volokh seeks therefore enjoys a First Amendment right of public access because it satisfies both the experience and logic prongs of the *Richmond Newspapers* test.

Once the First Amendment right of public access attaches, denial of access must be "necessitated by a compelling governmental interest, and [be] narrowly tailored to serve that interest." *Detroit Free Press*, 303 F.3d at 705 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982)) (internal quotations omitted)[3]. The presumption of openness in the First Amendment right of public access "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values." *Press-*

---

[3] Although the Sixth Circuit has applied the more deferential *Houchins* standard in some First Amendment challenges related to public access to government records, *see Phillips v. DeWine*, 841 F.3d 405, 418 (6th Cir. 2016), *Detroit Free Press* holds the *Richmond Newspapers* test applies to quasi-judicial proceedings. *See Detroit Free Press*, 303 F.3d at 705. Since the records requested here are judicial records, *Detroit Free Press* provides the correct legal standard. *See id.*

*Enter. Co. v. Superior Court of Cal.*, 464 U.S. 501, 510 (1984) (hereinafter *Press-Enterprise I*). Exceptions to the right of access in the context of courts include "the defendant's right to a fair trial, . . . privacy rights of participants or third parties, trade secrets and national security." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179. Moreover, the interest articulated must be accompanied by "findings specific enough" so that a reviewing court can determine if access was properly denied. *Detroit Free Press*, 303 F.3d at 705 (citing *Press-Enterprise II*, 478 U.S. at 10). Regarding the narrowly tailored prong, the government will be hard-pressed to justify blanket or categorical rules. *See id.*, 303 F.3d at 707.

With these requirements in mind, TPRA's residency requirement applied in the context of civil court records cannot survive strict scrutiny. Withholding the requested documents from Mr. Volokh based on his residency status does not serve a compelling government interest, and even if it did, the residency requirement is not narrowly tailored to serve any compelling interest. *See Detroit Free Press*, 303 F.3d at 705 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982)) (internal quotations omitted). The only interest Plaintiff can glean from TPRA's citizenship requirement is to limit the expenditure of government resources and to provide Tennessee citizens with requested documents in a timely fashion and with lower costs. Even if true, administrative convenience does not fall within the Sixth Circuit's permissible compelling interests for restricting public access to court records, *see Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179, and "the First Amendment does not permit the State to sacrifice speech for efficiency." *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 795 (1988). Nor can the Defendants assert a privacy interest on behalf of the parties in the underlying case—*Garramone v. Curtsinger. See Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179. Any articulation of the parties' privacy interest would be undercut by allowing

9

Tennessee citizens—possibly the parties' neighbors—to obtain the same information. Therefore, TPRA's citizenship requirement fails strict scrutiny. *See Detroit Free Press*, 303 F.3d at 705.

   2. **TPRA's Citizenship Requirement Violates the Privileges and Immunities Clause.**

Mr. Volokh also has a likelihood of success on his claim that TPRA's residency requirement violates the Privileges and Immunities Clause. The Privileges and Immunities Clause states, "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV. Claims under the Privileges and Immunities Clause undergo "a two-step inquiry." *Sup. Ct. of Va. v. Friedman*, 487 U.S. 59, 64 (1988). "First, the activity in question must be sufficiently basic to the livelihood of the Nation . . . as to fall within the purview of the Privileges and Immunities Clause." *Id.* (internal quotation marks and citations omitted). "Second, if the challenged restriction deprives nonresidents of a protected privilege, [courts] will invalidate it only if [courts] conclude that the restriction is not closely related to the advancement of a substantial state interest." *Id.* at 65. Mr. Volokh is likely to satisfy both requirements.

The Supreme Court has held the Privileges and Immunities Clause protects rights that are "fundamental." *Baldwin v. Fish and Game Comm'n of Mont.*, 436 U.S. 371, 383 (1978). The First Amendment safeguard liberties that "lie[] at the foundation of free government." *Marsh v. State of Ala.*, 326 U.S. 501, 509 (1946). Permitting a state to restrict a First Amendment right on the basis of citizenship necessarily burdens a fundamental right and, as a result, implicates the Privileges and Immunities Clause.

This case is distinguishable from *McBurney v. Young*, where the Supreme Court held that the provision of Virginia's Freedom of Information Act restricting access to state records

to citizens did not violate the Privileges and Immunities Clause. *McBurney v. Young*, 569 U.S. 221, 229 (2013). There, the Court noted that the plaintiff had sought *executive* records. *Id.* The Court's historical analysis found "only those persons who had a personal interest in *non-judicial* records were permitted to access them." *See id.* at 233 (emphasis added). In addition, the plaintiffs obtained the majority of the requested information through other statutory means, so the citizenship requirement constituted only an incidental burden. *McBurney*, 569 U.S. at 224. Moreover, Virginia's Freedom of Information Act "gives citizens and noncitizens alike access to judicial records," rendering *McBurney* and the Court's analysis inapplicable. *Id*. at 232 (citing VA. CODE ANN. § 17.1-208; *Shenandoah Publ'g House, Inc. v. Fanning*, 235 Va. 253, 258 (Va. 1988)).

This claim is sufficiently distinguishable to proceed in spite of *McBurney*. Unlike the records request at issue in *McBurney*, the records requested here implicate access to the courts—a right that falls squarely within the Privileges and Immunities Clause. *See McBurney*, 569 U.S. at 231. And unlike the plaintiffs in *McBurney*, who could access most of the requested records through another statute, Tennessee does not offer a similar alternative means that would allow Mr. Volokh to access the requested documents. *See id.* at 224. Furthermore, because the denial of the requested records implicates the First Amendment right to access judicial records and the First Amendment is fundamental to a free government, the Privileges and Immunities Clause prevents the TPRA from burdening that fundamental right based on citizenship. *Marsh*, 326 U.S. at 509. ;*see* Part IV(A)(1). Taken together, Mr. Volokh has demonstrated a likelihood of success on the first prong of the inquiry.

Next, it is clear that TPRA's residency requirement "is not closely related to the advancement of a substantial state interest." *Supreme Ct. of Va.*, 487 U.S. at 65. Here, the

11

Case 3:25-cv-00701    Document 7-1    Filed 06/25/25    Page 11 of 16 PageID #: 47

state's restriction must bear a substantial relationship to the state's objectives and the statute's purpose. *Id*. In other constitutional contexts, administrative convenience does not justify differential treatment. *Frontiero v. Richardson*, 411 U.S. 677, 691 (1973). In *Toomer*, the Supreme Court invalidated a South Carolina statute that imposed higher boat licensing fees and taxes on non-resident shrimpers for the purpose of conserving the state's shrimp supply. 334 U.S. at 396–99. In its analysis, the Court noted that South Carolina failed to produce evidence that non-citizens' fishing methods imposed a greater threat to the shrimp population or that the cost of enforcing shrimping laws was "appreciably greater" for non-citizens than it was for citizens. *Id.* at 398. The Court concluded that South Carolina could pass non-discriminatory regulations to address shrimp conservation concerns. *Id.* at 399.

For reasons similar to those in *Toomer*, denying Mr. Volokh access to civil court records based on his state residency violates the Privileges and Immunities Clause. *See id.* at 396–99. Any justification for TPRA's citizenship requirement that relies on administrative convenience is not a "substantial reason" that withstands constitutional scrutiny. *Frontiero*, 411 U.S. at 691. Moreover, TPRA's citizenship requirement lacks a "substantial relation" to the statute's purpose. *Sup. Ct. of Va.*, 487 U.S. at 65. Like South Carolina in *Toomer*, Tennessee cannot produce evidence that non-citizen public records requests represent a greater burden on taxpayers than requests made by Tennessee citizens or that other means could not be used to address administrative concerns in a non-discriminatory fashion. *Toomer*, 334 U.S. at 396–99. Indeed, the TPRA already contains a constitutionally compliant, nondiscriminatory provision like the hypothetical regulation contemplated by the *Toomer* court. *See Toomer*, 334 U.S. at 399; *see* TENN. CODE ANN. § 10-7-503(a)(7)(C). If a person is making a request with the intent to disrupt government operations, the records custodian can petition a court to enjoin the person

from making a records request. *Id.* § 10-7-503(a)(7)(C)(i). Consequentially, TPRA's citizenship requirement is not substantially related to any conceivable administrative interest. *See Toomer*, 334 U.S. at 398–99. Thus, Mr. Volokh's claim under the Privileges and Immunities Clause is sufficiently likely to succeed to warrant preliminary relief because the residency requirement burdens his First Amendment right of access to judicial records and is not closely related to the advancement of a substantial state interest.

### B. Mr. Volokh Will Suffer Irreparable Harm if the Injunction Is Not Granted.

Defendants' violation of Mr. Volokh's First Amendment right of access to judicial records creates irreparable harm because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (citation omitted); *see also ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015) (citation omitted) ("[E]ven minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief."). Furthermore, judicial records become less salient the longer the waiting period. For non-citizens, these documents are particularly critical—they may contain findings or outcomes that are crucial for potential litigation. Access to accurate and complete judicial records can be essential for asserting rights, demonstrating compliance with legal obligations, or conducting legal research generally.

"The First Amendment secures a right of *timely* access." *Planet*, 947 F.3d at 598 (emphasis added) (invalidating a Superior Court's no-access-before process policy because it caused greater delays than necessary to protect the county's administrative interest). While being denied access to the requested judicial records, Mr. Volokh is hindered from conducting research for his Reason Magazine-hosted blog. More importantly, he is undercut from projects

that enhance judicial transparency and understanding. *Brown and Williamson Tabacco*, 710 F.2d at 1178 ("Access to judicial documents acts as a check on courts by allowing the public to scrutinize judicial reasoning."). Delays in obtaining these records represent irreparable injury to Mr. Volokh's research sufficient to justify injunctive relief.

### C.  Granting the Injunction Will Not Cause Substantial Harm to Others.

Balancing the harm that Mr. Volokh would suffer if the injunction is denied with the potential inconvenience to Defendants or reputational harm to the parties in the underlying lawsuit for which records have been requested weighs in favor of granting the injunction. *See Caruso*, 569 F.3d at 277; *see also Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) ("[The balancing test] permits the district court, in its discretion, to grant a preliminary injunction . . . where [the movant] at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued."). The time commitment needed for Defendants to locate, scan, and send the requested records is negligible. Additionally, any potential harm suffered by the parties in the underlying lawsuit is negated by the fact that Tennessee citizens are permitted to access the same documents. Therefore, granting an injunction will not cause substantial harm to others.

### D.  An Injunction Furthers the Public Interest.

An injunction vindicating Mr. Volokh's First Amendment right of access to judicial records would further the public interest because "prevent[ing] the violation of a party's constitutional rights" advances the social good. *Caruso*, 569 F.3d at 278 (citation omitted). In First Amendment cases, the public interest is tied to the likelihood of success on the merits. *Id.* Since Defendants' denial of the requested documents likely violates Mr. Volokh's First

Amendment right of access to judicial records, an injunction advances the public interest as "the public as a whole has a significant interest in ensuring . . . [the] protection of First Amendment liberties." *Id.* Additionally, enjoining actions violative of the First Amendment as soon as possible vindicates the public interest in the rule of law and the acceptance of constitutional government. *See Bongo Prods., L.L.C. v. Lawrence*, 548 F. Supp. 3d 666, 686–87 (M.D. Tenn. 2021).

## V. Conclusion

Mr. Volokh is likely to succeed on the merits of his First Amendment and Privileges and Immunities claims. Mr. Volokh is suffering, and will continue to suffer, irreparable harm to his First Amendment rights if the preliminary injunction is not granted. Granting the preliminary injunction is not likely to cause even minimal inconvenience to Defendants and the parties of the underlying lawsuit, and any potential harm is far outweighed by the infringement on Mr. Volokh's constitutional rights. Finally, the public interest is promoted by protecting the First Amendment and allowing legal scholarship to flourish. For these reasons, this court should grant the motion for preliminary injunctive relief.

Respectfully submitted,

*/s/ Susan L. Kay*
SUSAN L. KAY (BPR# 006630)
JENNIFER SAFSTROM*
Jennifer.safstrom@vanderbilt.edu
RYAN RIEDMUELLER*
Ryan.riedmueller@vanderbilt.edu
Vanderbilt Law School Stanton Foundation
First Amendment Clinic
131 21st Ave South
Nashville, TN 37203-1181
Telephone: (615) 322-4964
\* *Motions for admission forthcoming*

*Counsel for Eugene Volokh*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was given to a process server, along with all other case initiation documents, for personal service on each Defendant at the addresses listed below on this June 25, 2025.

Williamson County Archives & Museum
Bradley Boshers
611 W. Main St.
Franklin, TN 37064

Williamson County Circuit Court Clerk
Debbie McMillan Barrett
Williamson County Judicial Center
135 4th Ave South
Franklin, TN 37064

*/s/ Ryan Riedmueller*
Ryan Riedmueller