IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **Eugene Volokh,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:25-cv-00701** |
| | ) | |
| v. | ) | **District Judge Aleta Trauger** |
| | ) | |
| **Williamson County Archives & Museum;** | ) | |
| **Bradley Boshers,** Archives Director for | ) | |
| The Williamson County Archives & | ) | |
| Museum; **Williamson County Circuit** | ) | |
| **Court Clerk; Debbie McMillan Barrett**, | ) | |
| Circuit Court Clerk., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS[1]

Come Defendants Williamson County Archives & Museum, Bradley Boshers in his official capacity, Williamson County Circuit Court Clerk's Office and Debbie McMillan Barrett in her official capacity as Williamson County Circuit Court Clerk ("County Defendants") pursuant to Rules 12(b)(1) & (6) of the Federal Rules of Civil Procedure and submit the following Memorandum of Law in support of their Motion to Dismiss.

### THE ALLEGATIONS[1]

In February 2025, Sharyn Nantuna emailed Angel Buttrey, a Deputy Clerk of the Williamson County Circuit Court Clerk's office and requested "Documents in *Garramone v. Curtsinger*, No. 22-CV-602, Williamson County Circuit Court (Tennessee)." (DE 1, Compl. ¶ 1; DE 1-2, Exh. A, PageID#13.) Ms. Nantuna requested "the petition for the ex parte temporary

---

[1] Allegations in the Complaint that are disputed will be addressed by Defendants at an appropriate time should the Court deny the Motion to Dismiss. However, Defendants recognize that for purposes of this Rule 12 Motion, the allegations must be taken as true.

1

order of protection, the actual ex parte order itself, the respondent's counter-petition, and any responses or replies as to the petition and the counter-petition." (DE 1, Compl. ¶ 21.) Ms. Buttrey responded, "Good morning, since you are out of state and not an attorney or party in this case you will need to submit a request to the following wcpublic.records@williamsoncounty-tn.gov." (DE 1-2, Exh. A, PageID#13.) That concluded the communication between Ms. Nantuna and Ms. Buttrey. There is no allegation that Plaintiff communicated with Ms. Buttrey or anyone else in the Williamson County Circuit Court Clerk's office.

Subsequently, Ms. Nantuna sent her request for records to wcpublic.records@williamsoncounty-tn.gov. (DE 1-2, Exh. A, PageID#11.) Defendant Bradley Boshers, Archives Director for the Williamson County Archives and Museum, responded directing the request to the Williamson County Circuit Court Clerk's office. (DE 1-2, Exh. A, PageID#12.) Ms. Nantuna responded with a screenshot of the email from Ms. Buttrey. (DE 1, Compl. ¶ 24; DE 1-2, Exh. A, PageID#13.) Boshers responded by directing Ms. Nantuna to the public records request form and noting that proof of Tennessee citizenship would be needed to process the request. (DE 1-2, Exh. A, PageID#14.) Ms. Nantuna responded, "I do not reside in Tennessee. Does this mean I won't be able to receive this documentation." (DE 1-2, Exh. A, PageID#14.) Boshers responded that without proof of Tennessee citizenship, the public records request was denied. (DE 1-2, Exh. A, PageID#15.) Plaintiff then objected to Boshers' interpretation of the public records act and was denied copies of the records on the same basis that Ms. Nantuna's request for copies had been denied. (DE 1, Compl. ¶ 29.)

Plaintiff filed the Complaint on June 24, 2025 and sought a preliminary injunction. Defense counsel supplied the requested records to Plaintiff's counsel by email dated June 26, 2025,

2

since Plaintiff's counsel is a Tennessee citizen and resident. (See Exhibit 1 attached hereto, Email correspondence enclosing requested records.)

## STANDARD OF REVIEW

A motion to dismiss for lack of standing or mootness is properly characterized as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Novo Nordisk, Inc. v. DCA Pharmacy*, No. 3:23-cv-00668, 2024 U.S. Dist. LEXIS 145602, at *3 (M.D. Tenn. Aug. 15, 2024). "Where a defendant challenges a plaintiff's standing to bring suit, the Court should first consider whether it has subject matter jurisdiction pursuant to Rule 12(b)(1) before it considers the substantive merits of a pleading pursuant to Rule 12(b)(6)." *Id.*

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the plaintiff's factual allegations fail as a matter of law to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The "district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). Dismissal with prejudice pursuant to Rules 12(b)(1) & (6) is appropriate.

## ARGUMENT

I. **Plaintiff's Claims are Moot.**

Article III establishes a "cradle-to-grave requirement that must be met in order to file a claim in federal court and that must be met in order to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011). "A case is moot when the issues presented are

3

no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Gottfried v. Medical Planning Servs.*, 280 F.3d 684, 691 (6th Cir. 2002). Here, the records sought by Plaintiff have been provided, rendering his claims moot. Defense counsel supplied the requested records to counsel by email dated June 26, 2025, expressly stating that counsel was free to share those records with Plaintiff. (See Exhibit 1 attached hereto, Email correspondence enclosing requested records.) When, as here, there is a factual attack on the subject matter jurisdiction of the Court under Fed. R. Civ. P. 12(b)(1), the Court has wide discretion to consider affidavits and documenting to resolve jurisdictional facts. *Cunningham v. Rapid Response Monitoring Servs.*, 251 F.Supp.3d 1187, 1192 (M.D. Tenn. 2017); *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Accordingly, the attached email correspondence and records are appropriate for consideration in assessing this Motion to Dismiss.

**II. The Claims Against the Williamson County Circuit Court Clerk/Debbie McMillan Barrett in her Official Capacity Should Be Dismissed because Plaintiff Lacks Standing to Pursue those claims.**

Standing is "a threshold issue for bringing a claim in federal court and must be present at the time the complaint is filed." *Moody v. Mich. Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017) (citing *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004)). A plaintiff may assert "his own legal rights and interests," but generally may not sue to protect the constitutional rights of a third party. *Moody*, 847 F.3d at 402 (citing *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)). Third-party standing is conferred when a plaintiff proves: (1) injury-in-fact to the plaintiff, (2) a close relationship between the plaintiff and third party whose rights he asserts, and (3) a hindrance preventing the third party from raising his own claims. *Id.*

Plaintiff does not allege that he made any request of or otherwise communicated with the Circuit Court Clerk's Office, and therefore does not have standing to sue the Williamson County

Circuit Court Clerk/Debbie McMillan Barrett in her official capacity. In this case, the only request made to the Circuit Court Clerk's office came from Sharyn Nantuna. Ms. Nantuna is not a plaintiff. Plaintiff Eugene Volokh does not have standing to assert the constitutional rights of Ms. Nantuna. Even if Plaintiff could show an injury in fact and Ms. Nantuna's role as Plaintiff's administrative assistant amounted to a close relationship, there is no allegation that Ms. Nantuna is hindered in some manner from raising her own claim. Accordingly, the claims against Williamson County Circuit Court Clerk/Debbie McMillan Barrett in her official capacity should be dismissed.

### III. Plaintiff's Claim of Violation of the Privileges and Immunities Clause Should Be Dismissed.

In *McBurney v. Young*, 569 U.S. 221 (2013), non-Virginia citizens' records requests were denied under Virginia's Freedom of Information Act, which made public records open for inspection and copying to Virginia citizens, but not to non-Virginians. The Supreme Court rejected Petitioners' claims that the Virginia law violated their rights under the privileges and immunities clause and the dormant commerce clause.

The Privileges and Immunities Clause does not dictate that "state citizenship or residency may never be used by a State to distinguish among persons." *McBurney*, 569 U.S. at 226 (citing *Baldwin v. Fish and Game Comm'n of Mont.*, 436 U.S. 371 (1978)). "Nor must a State always apply its laws or all its services equally to anyone, resident or nonresident, who may request it so to do." *Id.* The Privileges and Immunities Clause protects only those privileges and immunities that are "fundamental." The Supreme Court held that access to public information is not protected by the Privileges and Immunities Clause. *Id.* at 227.

Plaintiff cites *Toomer v. Witsell*, 334 U.S. 385 (1948), which struck down a South Carolina statute imposing a $2,500 license fee on out-of-state shrimping boats and only a $25 fee on in-state shrimping boats where petitioners alleged that the purpose of the statute was to create a

5

commercial advantage for residents of the state. In *Toomer*, the law was enacted for the protectionist purpose of burdening out-of-state citizens, thereby violating the privilege of pursuing a common calling. Such is not the case here. The *McBurney* Court found that Virginia's FOIA was not enacted to disadvantage out-of-state citizens:

> The state FOIA essentially represents a mechanism by which those who ultimately hold sovereign power (*i.e.*, the citizens of the Commonwealth) may obtain an accounting from the public officials to whom they delegate the exercise of that power. See Va. Const., Art. I, §2; Va. Code Ann. §2.2-3700(B). In addition, the provision limiting the use of the state FOIA to Virginia citizens recognizes that Virginia taxpayers foot the bill for the fixed costs underlying recordkeeping in the Commonwealth. Tr. of Oral Arg. 53-54. The challenged provision of the state FOIA does not violate the Privileges and Immunities Clause simply because it has the incidental effect of preventing citizens of other States from making a profit by trading on information contained in state records.

*McBurney*, 569 U.S. at 228. The same is true of the Tennessee Public Records Act.

Plaintiff, a professor, is very much like the *McBurney* plaintiff who argued he needed government records related to property to pursue his profession. Those arguments failed, and they fail here.

Plaintiff claims that he has a fundamental First Amendment right of access to judicial records guaranteed under the Privileges and Immunities clause. For the reasons set forth below, Plaintiff's First Amendment rights were not violated by the denial of the public records request. While Plaintiff also claims that the records requested here implicate "access to the courts" (DE 7-1, PageID#47), the basis of such a claim is not elucidated in the Complaint. In order to establish that he was denied access to the courts, a plaintiff must demonstrate that the defendant denied him effective and meaningful access to the courts, which is accomplished by showing that the defendant's actions prohibited him from filing suit or rendered his legal remedies ineffective. *Swekel v. City of River Rouge*, 119 F.3d 1259, 1263 (6th Cir. 1997). Here, there is no allegation

that Plaintiff sought to file suit in Williamson County either as a party or litigant, nor do the allegations otherwise demonstrate that Plaintiff was prohibited from filing suit or that his legal remedies were rendered ineffective by any action of Defendants. Indeed, there is no allegation that Plaintiff had any particular stake in the court proceeding at issue or that any person with such a stake in litigation is denied access by Williamson County court clerks. A similar access to court argument was rejected by the Supreme Court in *McBurney*:

> The challenged provision of the Virginia FOIA clearly does not deprive noncitizens of "reasonable and adequate" access to the Commonwealth's courts. Virginia's rules of civil procedure provide for both discovery, Va. Sup. Ct. Rule 4:1 (2012), and subpoenas *duces tecum*, Rule 4:9. There is no reason to think that those mechanisms are insufficient to provide noncitizens with any relevant, nonprivileged documents needed in litigation.

*McBurney*, 569 U.S. at 231-32. The same is true in Tennessee. *See* Tenn. R. Civ. P. 26, 45.

For these reasons, Plaintiff has failed to allege any violation of his rights under the Privileges and Immunities Clause.

### IV. Plaintiff's First Amendment Claim Should Be Dismissed because Plaintiff Does Not Have a First Amendment Right to Access the Records Sought.

#### A. The First Amendment does not encompass an individualized right to acquire any and all information from the government.

Supreme Court precedent is clear that the First Amendment does not "guarantee of a right of access to all sources of information within government control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978). "There is no discernible basis for a constitutional duty to disclose, or for standards governing disclosure of or access to information." *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978). As the Court explained,

> [T]he prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, but that does not make entry into the White House a First Amendment

right. The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965).

In *Nixon v. Warner Communications*, 435 U.S. 589 (1978), the Court determined that reporters had no First Amendment right to obtain physical copies of tape recordings made in the White House by President Nixon, even when those recordings were part of a court proceeding. During the trial of third parties, portions of the tapes were played for the jury and the public in the courtroom and transcripts were available. Subsequently, reporters sought permission to copy, broadcast and sell the public portions of the tapes played during the trial. The District Court denied the reporters' request. The appellate court reversed and the issue landed before the Supreme Court.

The reporters argued that they had a right under the First Amendment to copy and publish exhibits and materials displayed in open court. The Court noted that some members of the press who were in attendance at the trial were permitted to listen to the tapes and report on what was heard at the trial. Accordingly, there was "no question of a truncated flow of information to the public." *Id.* at 609. The Court held that the reporters were not entitled to copies of the tapes under the First Amendment, noting that the reporters had no greater constitutional rights than the public.[2]

In *McBurney v. Young*, the Supreme Court upheld the citizens only requirement of Virginia's public records law, noting, "This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws." 569 U.S. at 232. See also *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) ("The Constitution itself is [not] a Freedom of Information Act."); *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S.

---

[2] Similarly, the Court held that the Sixth Amendment guarantee of a public trial did not require the release of the tapes. "The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed. That opportunity abundantly existed here." *Id.* at 610.

32, 40 (1999) (the Government could decide "not to give out [this] information at all.") The Sixth Circuit reached the same conclusion following *McBurney* in a case specifically addressing the citizens-only restriction of the Tennessee Public Records Act. *Jones v. City of Memphis*, 531 Fed. Appx. 709 (6th Cir. 2013).

### B. The narrow exceptions to this rule carved out by the Supreme Court do not apply here.

The Supreme Court has found that the "public" is entitled to access under the First Amendment to criminal trials and criminal-like proceedings. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 (1980) (the public has a right to attend criminal trials); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604-05 (1982) (invalidated a Massachusetts statute that required trial judges, at trials for specified sexual offenses involving a victim under 18, to exclude the public from the courtroom during the testimony of the victim); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) (*Press-Enterprise I*) (trial court erred in closing criminal voir dire proceedings and refusing to release the transcript of the proceedings); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (trial court erred in closing a 41-day preliminary hearing and refusing to release the transcript).

The Court determined in these cases that "public access to criminal trials and selection of jurors is essential to the proper functioning of the criminal justice system." *Press-Enterprise II*, 478 U.S. at 12. The Court explained:

> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Press-Enterprise II*, 478 U.S. at 13 (citing *Press-Enterprise I,* 464 U.S. at 508).

9

The Supreme Court has not addressed whether the public is entitled to access under the First Amendment to civil trials or court records of proceedings. Notably, even the cases holding that the public has a right to open proceedings do not create an individualized First Amendment right for any given individual to access any particular court record. The finding of such a right would be a novel extension of the principles applied by the Supreme Court as to the right for Courts to be open to the "public".

**C. Sixth Circuit Precedent does not mandate the provision of records in this case.**

Plaintiff overstates the holding in *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002). Plaintiff cites that case for the proposition that "American citizens enjoy a First Amendment right of access ***to judicial records*** that state and local governments may not restrict unless the restriction withstands constitutional scrutiny." (emphasis added) (DE 7-1, Pl's Memo. of Law in support of M. for Injunction.) In *Ashcroft*, the plaintiffs challenged the categorical and complete closure of special interest administrative deportation proceedings after 9/11. The Court held that such categorical closure was not permissible. Contrary to Plaintiff's assertion, *Ashcroft* did not address "judicial records" at all both because the challenged hearings were administrative and because access to records was not an issue in the case.

While the Sixth Circuit recognized a generalized (as opposed to individualized) right to public access to civil trials in *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178 (6th Cir. 1983), it has not recognized an unfettered First Amendment right to access judicial records following open court proceedings. *See In re Search of Fair Fin.*, 692 F.3d 424 (6th Cir. 2012) (no First Amendment right of access to documents filed in search warrant proceedings or docket sheets of search warrant proceedings, even after warrant was served). Further, the Sixth Circuit has not addressed whether an individual citizen of another state has a constitutional right to access judicial

10

records, particularly when the records remain open and accessible to the citizens of the state where the proceedings occurred.

Plaintiff has not cited, and defense counsel has not located any binding authority addressing whether the denial of a request for records related to an application for an order of protection based on a citizens-only restriction in a state's public records law violates the First Amendment. Such a conclusion is not mandated by either the Supreme Court or Sixth Circuit precedent.

### D. Plaintiff's First Amendment Rights Were Not Violated by the Denial of the Records Request.

There is no allegation that the court proceedings related to the records requested by Plaintiff were not open to the public. In *Nixon*, where the information sought was available to the public during an open trial, but a subsequent request for copies of the records was denied, the Supreme Court held that such denial was not a constitutional violation. *Nixon v. Warner Communications*, 435 U.S. 589 (1978). The same is true here.

Further, it is even clearer in this instance that there is no constitutional violation because the requested records remain open and available to over 7 million Tennessee citizens[3], to individuals with a stake in the case, and to any others who simply ask a Tennessee citizen to make a request on their behalf. The cases where the Supreme Court made exceptions to the general rule that the First Amendment does not encompass a right to acquire information from the government (*Richmond Newspapers, Globe Newspaper Co., Press-Enterprise I, Press-Enterprise II*) involved Court proceedings that were sealed from <u>all</u> public view. The justification for those exceptions included: ensuring that citizens could effectively participate in and contribute to their republican system of self-government; ensuring the proper functioning of the judicial process by permitting

---

[3] https://www.census.gov/quickfacts/TN.

public scrutiny with the aim of enhancing the quality and safeguarding the integrity of the factfinding process; fostering an appearance of fairness to heighten public respect for the judicial process; and permitting the public to serve as a check upon the judicial process. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604-06 (1982).

The justifications relied upon by the Supreme Court in those cases have been met here through the availability of the records to Tennessee citizens. The records at issue are not sealed away from public view. They are available to over 7 million Tennessee citizens (and anyone with whom those Tennessee citizens share the record). The openness that "enhances both the basic fairness of the … trial and the appearance of fairness so essential to public confidence in the system" has been achieved where the original proceeding was open to the public and the records remain open to over seven million Tennessee citizens. *See Press-Enterprise II*, 478 U.S. at 13. The aim of ensuring participation in self-government has been fulfilled here where Tennessee citizens have ready access to the records at issue. Similarly, the objectives of ensuring the proper functioning of the judicial system and heightening public respect for the judicial process are achieved through Tennessee citizens' access to the judicial records.

**E. The Experience and Logic Test is Ill-Suited to the Facts Presented.**

The "experience and logic test" that Plaintiff asks the Court to apply is typically applied in analyzing cases such as those discussed above – where the Court is deciding whether there is a generalized right for Court records or proceedings to be public – not an individualized right for a particular individual to access specific records. Under the "experience and logic test," there is a First Amendment right of public access to a proceeding or document when "there has been a tradition of accessibility" to that kind of proceedings, and when "access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 10.

Both prongs of the test must be satisfied to establish a right of access. *U.S. v. Martavious Kincaide*, 119 F.4th 1074, 1081 (6th Cir. 2024). Once established, a presumption of public access may only be overcome by a compelling government interest. *Press-Enterprise II*, 478 U.S. at 9.

The experience and logic test was developed and has been employed in cases where a proceeding or record was closed to all members of the public. *See e.g., Press-Enterprise II*, 478 U.S. 1, *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002). The application of the test in a situation like the one presented here - where the proceeding was open to the public and the records are available to Tennessee citizens - is illogical. As explained above, the goals served by the experience and logic test – enhancing fairness of proceedings, ensuring public confidence in the justice system, serving as a check on potential abuses of judicial power – are already met here, where over seven million Tennesseans have open access to the records at issue.

Plaintiff attempts to transform a test designed to determine if a particular proceeding or document can be closed to all members of the public into a declaration of a personal, individualized First Amendment right of access to each and every proceeding or judicial document filed across the United States. Precedent does not support the existence of such an expansive right nor does it support the application of the experience and logic test in this context.

### F. If the experience and logic test apply here, it does not dictate that the requested records should be accessible to non-Tennessee citizens.

Even if the experience and logic test can be properly applied in this context, the two factors weigh against a First Amendment right of access. With respect to the experience prong, the Supreme Court cases finding a First Amendment right of access to a proceeding point to a tradition of public access dating at least to the early nineteenth century. *U.S. v. Martavious Kincaide*, 119 F.4th 1074, 1078 (6th Cir. 2024) (collecting cases). Sixth Circuit precedent has demanded "a long-established and widespread tradition of public access, though not necessarily one dating to the

13

Founding era." *Id.* The history of orders of protection is relatively brief. Protection order legislation was first implemented in the United States in the 1970s.[4] Tennessee first enacted legislation allowing orders of protection in 1979. Tenn. Code Ann. § 36-3-601, *et seq.*[5]

The Tennessee Public Records Act was first enacted in 1957 and included the citizens only requirement. Tenn. Code Ann. § 10-7-503, *et seq.* The TPRA has been amended since that time, but the citizenship requirement has remained. The Tennessee Attorney General's Office issued two opinions stating that the citizens only requirement of the TPRA is constitutional. In 1999, the Tennessee Attorney General concluded that denying a request by a California organization's executive director for copies of traffic citations does not violate the Privileges and Immunities Clause. Tenn. Att'y Gen. Op. 99-067, 1999 Tenn. AG LEXIS 67. In 2001, the Attorney General concluded that persons who are not citizens of Tennessee can be denied access to public records and that denying access to records in the absence of proof of state citizenship does not violate the Privileges and Immunities Clause. Tenn. Att'y Gen. Op. 01-132, 2001 Tenn. AG LEXIS 139. The citizenship requirement of the Tennessee Public Records Act predated the order of protection statute. Accordingly, in their relatively brief history, Tennessee orders of protection have not been accessible to non-Tennesseans under the TPRA and the experience prong has not been met.

With respect to the logic prong, providing access to non-Tennessee citizens would not "play a significant positive role" in the functioning of the order of protection process in Tennessee.

---

[4] Christopher T. Benitez, Dale E. McNeil and Renee L. Blinder, Do Protection Orders Protect? Journal of the American Academy of Psychiatry and the Law Online, Sept. 2019, 38(3) 376-385. https://jaapl.org/content/38/3/376#ref-4.

[5] While the experience inquiry is not generally limited to a particular jurisdiction (*U.S. v. Martavious Kincaide*, 119 F.4th 1074, 1078 (6th Cir. 2024)), such a limitation is appropriate in these unique circumstances where the document requested is broadly available to Tennessee citizens and the Supreme Court has upheld a state public records law with a citizenship requirement. *McBurney v. Young*, 569 U.S. 221, 226 (2013).

*Press-Enterprise II*, 478 U.S. at 8.  As explained above, the logical aims of providing public access are already met by making the records open to Tennessee citizens.  The TPRA is a mechanism by which Tennessee citizens may participate in self-government by holding accountable the public officials to whom they delegate power.  No significant additional benefits can be gleaned by making the records open to non-citizens.  Conversely, requiring that records be provided to all out-of-state citizen requesters would result in added expense to Tennessee taxpayers and delays in responses to records requests from Tennessee citizens.  As the Court recognized with respect to Virginia citizens in *McBurney*, limiting the use of the TPRA to Tennessee citizens "recognizes that [Tennessee] taxpayers foot the bill for the fixed costs underlying recordkeeping in the [State]." *McBurney v. Young*, 569 U.S. 221, 228 (2013).  Accordingly, Plaintiff also cannot meet the logic prong of the test.

For the reasons set forth above, Plaintiff does not have a First Amendment right to access the records requested and his claims should be dismissed.  There is no occasion to comment on the common law right of access to judicial records because Plaintiff raises only a First Amendment claim here.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the claims be dismissed.

Respectfully submitted,

*/s/Lisa M. Carson*
Lisa M. Carson, BPR# 14782
Lee Ann Thompson, BPR# 28040
**BUERGER, MOSELEY & CARSON, PLC**
*Attorneys for Defendants*
4068 Rural Plains Circle, Suite 100
Franklin, TN 37064
Telephone: (615) 794-8850
lcarson@buergerlaw.com
lthompson@buergerlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been electronically filed and delivered via the Court's ECF system to Attorneys for Plaintiff, Susan L. Kay, Jennifer Safstrom, Jennifer.safstrom@vanderbilt.edu, Ryan Riedmueller, Ryan.riedmueller@vanderbilt.edu, Vanderbilt Law School Stanton Foundation, First Amendment Clinic, 131 21st Ave. South, Nashville, TN 37203-1181 on this the 17th day of July, 2025.

                                          */s/Lisa M. Carson*
                                          Lisa M. Carson