# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **EUGENE VOLOKH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:25-cv-00701** |
| ) | **Judge Aleta A. Trauger** |
| **WILLIAMSON COUNTY ARCHIVES** ) | |
| **& MUSEUM**; **BRADLEY BOSHERS**, in ) | |
| his official capacity as Archives Director for ) | |
| the Williamson County Archives & ) | |
| Museum; **WILLIAMSON COUNTY** ) | |
| **CIRCUIT COURT CLERK**; **DEBBIE** ) | |
| **MCMILLAN BARRETT**, in her official ) | |
| capacity as Williamson County Circuit ) | |
| Court Clerk, ) | |
| ) | |
| **Defendants,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **STATE OF TENNESSEE,** ) | |
| ) | |
| **Defendant-Intervenor.** ) | |

## MEMORANDUM

The Tennessee Public Records Act grants Tennessee citizens the right to inspect government records. The plaintiff, of California, requested Tennessee court records from public employees, who denied his request because he is not a Tennessee citizen. The plaintiff alleges that this denial violates the First Amendment and the Privileges and Immunities Clause of the U.S. Constitution. Before the court is the defendants' Motion to Dismiss (Doc. No. 13), which, for the reasons set forth herein, the court will deny in part and reserve in part. The court will order further briefing.

## I. FACTS

Plaintiff Eugene Volokh is a prominent First Amendment scholar and litigator,[1] a Senior Fellow at the Hoover Institution at Stanford University, and a resident of California. (Compl., Doc. No. 1 ¶¶ 9, 15–19.) Volokh's assistant is non-party Sharyn Nantuna, who has written emails on his behalf from her "@stanford.edu" email address and whose email signature indicates that she is a Senior Program Assistant at the Hoover Institution. (*See* Doc. No. 1-2 at 2;[2] *see also* Doc. No. 17 at 5 (describing Nantuna as "Volokh's assistant").) She also is not a Tennessee resident. (Doc. No. 1-2 at 5.) Because Volokh wanted Tennessee court records, Nantuna—on Volokh's behalf— emailed Tennessee government entities, whose representatives denied Volokh's request because he is not a Tennessee citizen. (Compl. ¶¶ 20–29.) The court will describe Nantuna's correspondence in detail because it is relevant to the court's standing analysis.

On February 4, 2025, Nantuna emailed "defendant Williamson County Circuit Court Clerk," seeking records in a case in Williamson County Circuit Court, *Garramone v. Curtsinger*.[3] (Compl. ¶¶ 1, 20.) That email is not in the record.[4] The Circuit Court's deputy clerk, non-party

---

[1] The plaintiff's work has been cited in hundreds of court opinions, including in opinions of the Supreme Court of the United States. (Compl. ¶ 18.)

[2] The plaintiff attached to his Complaint Nantuna's email correspondence with government employees (Doc. No. 1-2), which the court may consider without converting the Motion to Dismiss into a motion for summary judgment because it is referred to in the Complaint and central to its claims. *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024) (citing *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)).

[3] The documents Volokh sought, which were originally filed in the General Sessions Court of Williamson County, and which defense counsel sent to plaintiff's counsel and filed as an exhibit to the Memorandum in Support of Motion to Dismiss, relate to a Petition for Order of Protection regarding alleged stalking. (Doc. No. 14-1 at 4–11.) The documents were filed in the Circuit Court because the defendant appealed the General Sessions judge's decision regarding attorney's fees. *See generally Garramone v. Curtsinger*, No. M2023-01010-COA-R3-CV, 2025 WL 354708 (Tenn. Ct. App. Jan. 31, 2025).

[4] While the Complaint purports to cite Nantuna's email to the Circuit Court, (*see* Compl. ¶ 20 (citing "Exhibit A at 1," which is in the record at Doc. No. 1-2 at 2)), the plaintiff has not

2

Angel Buttrey, responded to inform Nantuna that, since she was "out of state and not an attorney or party in this case [she would] need to submit a request" to the email address of the Williamson County Archives and Museum. (Doc. No. 1-2 at 4; Compl. ¶ 22.) Hours later, Nantuna wrote to the email address Buttrey had specified. (Compl. ¶ 22.) Nantuna began, "I am writing on behalf of Eugene Volokh." (Doc. No. 1-2 at 2.) She continued, "He would like" several documents in *Garramone*: the petition for the ex parte order of protection, the ex parte order, the respondent's counter-petition, and any responses or replies to the counter-petition. (*Id.*) The next day, February 5, 2025, defendant Bradely Boshers, Archives Director of the Williamson County Archives and Museum, responded to Nantuna's request by directing her to the Circuit Clerk. (Compl. ¶ 23; Doc. No. 1-2 at 3.) Nantuna responded, copying Volokh, indicating that the Circuit Court had earlier directed her to the Archives and Museum. (Compl. ¶ 24, Doc. No. 1-2 at 4.) Boshers responded to Nantuna, with Volokh copied, "We will need proof of TN citizenship to process your request," and provided a link to Williamson County's public records request form. (Compl. ¶ 27; Doc. No. 1-2 at 5.) Nantuna responded, again with Volokh copied: "I do not reside in Tennessee. Does this mean I won't be able to receive this documentation?" (Doc. No. 1-2 at 5.) Boshers responded to Nantuna, with Volokh copied: "Without proof of Tennessee citizenship, your public records request is denied." (Doc. No. 1-2 at 6.) The Complaint further alleges that Volokh "objected to Mr. Boshers' interpretation and application of the Tennessee Public Records Act but was denied once again." (Compl. ¶ 29.)[5]

---

filed Nantuna's email to the Circuit Court. The email in the record at Doc. No. 1-2 at 2 is Nantuna's email to the Archives and Museum.

[5] Neither Volokh's correspondence with Boshers, nor any correspondence written by or sent directly to Volokh, is in the record.

3

The court notes some ambiguity in the partial email correspondence in the record and some tension between the record and the Complaint's allegations. While Nantuna states in her email to the Archives and Museum that she is writing on behalf of Volokh, the emails do not make clear whose citizenship the defendants considered in their denial—Nantuna's, Volokh's, or both. For example, Deputy Clerk Buttrey, in the email exchange with Nantuna, denies the request "since *you* are out of state." (Doc. No. 1-2 at 4 (emphasis added).) In her correspondence with Archives Director Boshers, Nantuna writes, "*I* do not reside in Tennessee. Does this mean *I* won't be able to receive this documentation?" to which Boshers responds, "Without proof of Tennessee citizenship, *your* public records request is denied." (Doc. No. 1-2 at 5–6 (emphasis added).) Thus, it is unclear whose citizenship led to the request's denial.

As to tension between the Complaint and the email correspondence, the Complaint alleges that "Mr. Boshers . . . requested Mr. Volokh's assistant fill out a form and provide proof of *Mr. Volokh's* Tennessee residency as required by Tenn. Code Ann. § 10-7-503(a)." (Compl. ¶ 27 (citing Doc. No. 1-2 at 5) (emphasis added).) But Boshers' email does not mention Volokh's residency or Tennessee law. (Doc. No. 1-2 at 5.) Rather, Boshers writes to Nantuna, "We will need proof of TN citizenship to process your request," and then provides a link to an online form. The Complaint alleges that then, "Since *Mr. Volokh* does not reside in Tennessee, Mr. Boshers denied Mr. Volokh's public records request." (Compl. ¶ 28 (citing Doc. No. 1-2 at 5) (emphasis added).) Again, it is not clear whose citizenship Boshers considered when he denied the request. However, drawing all reasonable inferences in the plaintiff's favor, the court finds that the Complaint alleges that the defendants denied the records request based on Volokh's citizenship.

## II.        PROCEDURAL HISTORY

Volokh filed a Complaint alleging that the defendants' denial of his public records request violates the First Amendment to the United States Constitution and the Privileges and Immunities

4

Clause of the same. (Compl. ¶¶ 3–4.) He seeks declaratory and injunctive relief, costs, and fees. (*Id.* 7–8.) The next day, Volokh filed a Motion for Preliminary Injunction (Doc. No. 7) and an accompanying Memorandum (Doc. No. 7-1), in which he asked the court to order the defendants to give him the documents he requested. (*See* Doc. No. 7-1 at 2.) The day after that, defense counsel supplied plaintiff's counsel with the documents (Doc. No. 14-1 at 2–3), and Volokh soon thereafter withdrew without prejudice his Motion for Preliminary Injunction. (Doc. No. 8.)

The defendants have filed a Motion to Dismiss (Doc. No. 13) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), an accompanying Memorandum (Doc. No. 14), and an exhibit (Doc. No. 14-1), to which the plaintiff has filed a Response (Doc. No. 17), and in further support of which the defendants have filed a Reply. (Doc. No. 18.) The plaintiff has also filed a Notice of Supplemental Authority, alerting the court to the Sixth Circuit's decision in *McCaleb v. Long*, 152 F.4th 728 (6th Cir. 2025), which was issued after the original parties finished briefing the Motion to Dismiss. (Doc. No. 21.) Meanwhile, the State of Tennessee, through its Attorney General, filed an unopposed Motion to Intervene under 28 U.S.C. § 2403(b) (Doc. No. 19), which the court granted. (Doc. No. 20.) Tennessee has filed a Memorandum in Support of the Constitutionality of Tenn. Code Ann. § 10-7-503(a)(2)(A). (Doc. No. 22.)

## III.    LEGAL STANDARDS

### A.      Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs dismissal for lack of subject matter jurisdiction. Defendants can challenge the court's subject matter jurisdiction through a *facial* or *factual* attack. *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack challenges the sufficiency of the pleading itself. *Roberts v. Progressive Preferred Ins. Co.*, No. 24-3454, --- F.4th ----, 2026 WL 508264, at *2 (6th Cir. Feb. 24, 2026) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). In reviewing a facial challenge,

5

the court must accept the complaint's allegations as true and evaluate jurisdiction accordingly. *Gentek*, 491 F.3d at 330. By contrast, a factual attack challenges "the factual existence of subject matter jurisdiction," so the court does not presume the truth of the complaint's factual allegations but instead weighs evidence to determine whether it has jurisdiction. *Roberts*, 2026 WL 508264, at *2 (citations omitted). In this case, the defendants bring both a facial attack (regarding standing) and a factual attack (regarding mootness).

### B.     Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). But a complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). Upon a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded facts as true and draws "all reasonable inferences" in the plaintiff's favor. *Romero v. City of Lansing*, 159 F.4th 1002, 1006 (6th Cir. 2025) (citing *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019)).

6

## IV.    DISCUSSION

### A.    The Tennessee Public Records Act

The Tennessee Public Records Act (the "Act" or "TPRA"), Tenn. Code Ann. § 10-7-503 *et seq.*, is intended "to facilitate the public's access to government records." *Tennessean v. Metro. Gov't*, 485 S.W.3d 857, 864 (Tenn. 2016) (citation omitted). The Supreme Court of Tennessee has explained that "[p]roviding access to public records promotes governmental accountability by enabling citizens to keep track of what the government is up to." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 360 (Tenn. 2008) (citations omitted). Thus, the Act provides, in relevant part, that "all state, county and municipal records shall . . . be open for personal inspection *by any citizen of this state*, and those in charge of the records shall not refuse such right of inspection *to any citizen*, unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a)(2)(A) (emphasis added).[6] Importantly, the Act does not entitle non-citizens, like the plaintiff, to inspect Tennessee records. As intervenor, the State of Tennessee explains, the "TPRA is a service provided to Tennesseans so that they may hold Tennessee government officials accountable." (Doc. No. 22 at 4 (citing *Tennessean*, 485 S.W.3d at 864).) The purpose of the citizenship requirement, Tennessee explains, is to ensure that "Tennesseans—who foot the bill for recordkeeping—are the primary beneficiaries under the TPRA." (*Id.* (citing *Jones v. City of Memphis*, 531 F. App'x 709, 710 (6th Cir. 2023)).)

---

[6] The Act contains certain exceptions to disclosure not relevant here. *See Tennessean*, 485 S.W.3d at 864–65 (providing, as an example, investigative records of the Tennessee Bureau of Investigation). That is, the defendants do not argue that the plaintiff was denied access to records because of anything having to do with the records themselves and, in fact, supplied them to his counsel and filed them on this court's public docket.

7

All parties describe the TPRA as imposing a citizenship or residency "requirement."[7] In Nantuna's correspondence with the Archive, for example, Boshers states, "We will need proof of TN citizenship to process your request," and directs Nantuna to fill out an electronic form on a Williamson County website. (Doc. No. 1-2 at 5.) The form asks whether the requester is "a Tennessee citizen," and states that "Proof of Tennessee residency/citizenship is required." Williamson County, Request for Public Records, https://williamsoncounty-tn.gov/FormCenter/Public-Records-Request-3/Request-for-Public-Records-2018-39 [perma: https://perma.cc/5P4Y-KKLL] (last visited Feb. 26, 2026).

But, in fact, the TPRA appears to impose no citizenship "requirement" to inspect Tennessee records. Indeed, a 2001 Opinion of the Tennessee Attorney General, which the defendants cite for a different proposition (*see* Doc. No. 14 at 14 (citing Tenn. Att'y Gen. Op. 01-132, 2001 Tenn. AG LEXIS 139)), states, "The plain language of the statute *does not prohibit the release of public records to non-citizens*, nor does it affirmatively require disclosure to non-citizens." Tenn. Att'y Gen. Op. 01-132, at *1 (emphasis added). In addition, in just one sentence in the defendants' Reply brief, the defendants state, ". . . just as the plaintiffs in *McBurney* [*v. Young*, 569 U.S. 221 (2013)] had access to judicial records through other methods, Plaintiff could seek the records at issue through a petition to the court that decided the matter as opposed to a public records request[.]" (Doc. No. 18 at 4.)[8]

---

[7] *See, e.g.*, Compl. ¶ 45 ("TPRA's residency requirement"); Doc. No. 13 at 2 ("citizens-only requirement"); Doc. No. 14 at 14 ("citizens only requirement"); Doc. No. 17 at 4 ("resident-only requirement"); *id.* at 8, 14 ("citizenship requirement"); Doc. No. 18 at 4 ("citizenship requirement"); Doc. No. 22 at 1 ("residency requirement in § 10-7-503(2)(A) of the Tennessee Public Records Act").

[8] To be clear, Volokh did, first, request the documents from the Circuit Court, albeit not by petition. The defendants do not argue, and the record does not suggest, that any government employee, website, or guide directed Volokh to file a petition with the court or gave him any reason to think that such a petition would be successful.

The parties do not state what law, regulation, or policy *prohibits* public officials from supplying non-citizens with records—other than an apparent *de facto* policy in Williamson County formalized in an electronic form. And the defendants imply that Volokh would have succeeded in his request for records if he had petitioned the court, rather than submitted a public records request. If that is the case, then it is not clear what teeth the TRPA's citizenship "requirement" has regarding court records. Moreover, the parties have not briefed how the circuit courts or archives in other counties interpret the TPRA, and whether they similarly restrict non-citizen access to court records when the request is made by email to the circuit court clerk or to the archives, but grant—or at least entertain—a request for records when made by petition. For its part, intervenor the State of Tennessee defends the "citizenship requirement," but characterizes it as "merely limit[ing] a *right* to access government records to residents of" Tennessee. (Doc. No. 22 at 3 (emphasis added).)

**B.      Tennessee's Intervention**

Tennessee has intervened "for the sole purpose of defending the constitutionality of Tenn. Code Ann. § 10-7-503(a)(2)(A), which . . . Volokh has challenged." (Doc. No. 22 at 1.) At the same time, Tennessee describes Volokh as bringing only an as-applied challenge. (*Id.* at 5 ("Plaintiff claims that Defendants' *conduct* violated his constitutional rights . . . . In other words, Plaintiff claims that the TPRA's residency requirement is unconstitutional as applied in this case."). And Tennessee "takes no position on these as-applied claims, which do not draw into question the facial validity of either the TPRA itself or the residency requirement in § 10-7-503(a)(2)(a)." (*Id.* at 5.) By contrast, Tennessee states, "In a facial challenge, . . . neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications. Plaintiff fails to perform that . . . task." (*Id.* (citation and internal quotation marks omitted).)

Indeed, Volokh makes clear that he brings only an as-applied challenge to subsection 503(a)(2)(A) of the TPRA. First, he seeks declarations that the defendants' enforcement of the

9

TPRA against him violated his constitutional rights and an injunction ordering the defendants to provide him with the documents he requested. (Compl. 7–8.) He does not ask the court to declare the TPRA, or any portion thereof, unconstitutional. *Accord Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518 n.9 (6th Cir. 2019) (interpreting the plaintiffs' claims as as-applied challenges where "they argue throughout their briefs that the restriction violated plaintiffs' rights specifically, and they do not address factors relevant to a claim of facial unconstitutionality"). Second, the plaintiff specifies that he challenges the TPRA only insofar as it implicates judicial records. (*See* Doc. No. 17 at 16–17 (stating that "the Sixth Circuit upheld the citizenship requirement of the [TPRA] as applied to *executive* records," whereas "the records requested here implicate the First Amendment right of access to the courts" (emphasis in original) (citing *Jones*, 531 F. App'x at 710).)[9]

Thus, Tennessee takes no position on Volokh's as-applied challenge and appears to contend (correctly) that he does not bring a facial challenge. To the extent that Tennessee seeks to defend the facial validity of the TPRA, facial validity is not at issue here.

### C.     42 U.S.C. § 1983

Volokh brings suit under 42 U.S.C. § 1983. (Compl. ¶ 5.) To state a claim under Section 1983, a plaintiff must allege the deprivation of federal rights by a person acting under color of state law. *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 870 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1901 (2025). Notably, Section 1983 creates liability only for *persons*. *Hohenberg v. Shelby Cnty.*, 68 F.4th 336, 342 (6th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)). The Complaint names four defendants: "[1] Williamson County Archives &

---

[9] *But see* Doc. No. 17 at 2 ("Because the TPRA restricts rights guaranteed by the United States Constitution on the basis of state citizenship, it is unconstitutional.").)

10

Museum; [2] Bradley Boshers, Archives Director for the Williamson County Archives & Museum[;] [3] Williamson County Circuit Court Clerk; [and 4] Debbie McMillan Barrett, [Williamson County] Circuit Court Clerk." (Compl. 1.) The individual defendants are sued in their official capacities only. (Compl. ¶¶ 11, 14.) The court will briefly discuss some of the defendants.

*First*, defendant "Williamson County Circuit Court Clerk" is duplicative of defendant Barrett, sued in her official capacity as Williamson County Circuit Court Clerk.[10] *Second*, the plaintiff alleges that defendant Williamson County Archives and Museum is a "department of the Williamson County government." (Compl. ¶ 10.) But municipal departments are not "persons" under Section 1983, and therefore the Archives and Museum is also an improper party. *See, e.g.*, *Johnson v. Lampley*, No. 3:24-cv-1304, 2025 WL 2415797, at *3 (M.D. Tenn. Aug. 20, 2025) (Crenshaw, J.) ("A county department or agency is not a 'person' within the meaning of § 1983 and therefore cannot be sued under that statute." (first citing *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007); and then citing *Edward v. Macomb Cnty. Jail*, No. 2:16-cv-11596, 2016 WL 2937146, *2 (E.D. Mich. May 20, 2016))). Rather, Williamson County is the appropriate party. *See Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("Because the McCracken County Jail is a department of the county, the county is the appropriate party to address Watson's suit." (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994))).

### D. Jurisdiction

The defendants argue that the plaintiff lacks standing to sue the "Williamson County Circuit Court Clerk's Office and/or Debbie McMillan Barrett in her official capacity" and that the

---

[10] The court presumes that the defendants' references to the "Williamson County Circuit Court Clerk's *Office*" as a defendant were inadvertent misstatements. (Doc. No. 13 at 1; Doc. No. 14 at 1 (emphasis added).)

case is moot. (Doc. No. 13 at 1.) The jurisdictional doctrines of standing and mootness originate from Article III's limited grant of judicial power. *Gun Owners of Am., Inc. v. U.S. Dep't of Just.*, 157 F.4th 834, 839 (6th Cir. 2025) (citing U.S. Const. art. III, § 2, cl. 1). Article III of the United States Constitution limits federal court jurisdiction to "actual cases and controversies." *W6 Rest. Grp., Ltd v. Loeffler*, 140 F.4th 344, 349 (6th Cir. 2025).[11]

### 1.    Mootness

The case and controversy requirement applies throughout the litigation. *In re Flint Water Cases*, 53 F.4th 176, 188 (6th Cir. 2022) (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Thus, courts cannot adjudicate disputes that have become moot. *In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023) (citing *Hanrahan v. Mohr*, 905 F.3d 947, 960 (6th Cir. 2018)). As the Supreme Court has explained, mootness "addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit.'" *W. Va. v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022) (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (alteration in *W. Va.*)). Put another way, a case is moot when, if the court were to grant the relief sought, it would not "make a difference to the legal interests of the parties." *Patton v. Fitzhugh*, 131 F.4th 383, 392–93 (6th Cir. 2025) (quoting *McPherson v. Mich High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997)).

The defendants argue that, because they have supplied Volokh, through counsel, the records he requested, his claims are moot. (Doc. No. 14 at 3–4.) Volokh responds that, under the "voluntary cessation" doctrine, his claims are not moot. (Doc. No. 17 at 7–9.) Under the voluntary cessation doctrine, a defendant cannot moot a case merely by ceasing the challenged conduct;

---

[11] Courts may address standing and mootness in any order; here, the court begins with mootness. *Loeffler*, 140 F.4th at 349 (citing *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023)).

12

otherwise, the defendant could simply resume the offending practice after the suit is dismissed. *Pavia v. Nat'l Collegiate Athletic Ass'n*, 154 F.4th 407, 414 (6th Cir. 2025) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Rather, "a defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (internal quotation marks and citations omitted). This is a "formidable burden." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 190). For voluntary cessation to moot a case, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *State of Tenn. v. Dep't of Educ.*, 104 F.4th 577, 589 n.8 (6th Cir. 2024) (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)).

Volokh argues that the defendants' voluntary cessation has not mooted this case because they defend the citizenship requirement and only changed their behavior after he filed suit; therefore it is likely that they will continue to enforce it against others. (Doc. No. 17 at 7–9.) The court agrees. Because the defendants and the state defend the legality of the citizenship requirement, it is not "clear" that the defendants will not enforce it against others. Nor is it clear that the defendants would not enforce the citizenship requirement against Volokh, were the court to dismiss this case and were he to request another document. And it can hardly be said that the defendants ceased the allegedly unlawful behavior, because they did not supply the documents to Volokh himself. Rather, defense counsel sent the documents Volokh requested to his attorney, based on defense counsel's belief that plaintiff's counsel is a citizen of Tennessee. And because plaintiff's counsel signed the Complaint, defense counsel "treated the pleadings in this case as a

13

request for the . . . records by a Tennessee citizen." (Email from defense counsel to plaintiff's counsel, Doc. No. 14-1 at 2.)[12] Accordingly, the plaintiff's claims are not moot.

### 2. Standing

To have standing, the plaintiff must "have a personal stake in the case." *Roberts*, 2026 WL 508264, at *3 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). Standing's three-prong test requires: "(1) an 'injury in fact' that is 'concrete and particularized,' and 'actual or imminent'; (2) 'a causal connection between the injury and the conduct' at issue, meaning that the injury must be fairly traceable to the defendant's action; and (3) a likelihood that the injury would be 'redressed by a favorable decision' of the court." *Henry v. Blank*, 167 F.4th 375, 380–81 (6th Cir. 2026) (quoting *Dayton Area Chamber of Com. v. Kennedy*, 147 F.4th 626, 632 (6th Cir. 2025)).

The defendants argue that Volokh lacks standing to bring his claims against the Circuit Court Clerk and Circuit Court Clerk Barrett because he never "made any request of or otherwise communicated with the Circuit Court Clerk's Office." (Doc. No. 14 at 4–5.)[13] Instead, only

---

[12] The court notes two oddities of the defendants' position, as represented in counsel's email. First, *plaintiffs* seek relief through pleadings, not attorneys who sign them. It makes no sense to treat the Complaint as plaintiff's counsel's request for documents. Second, while Volokh (or his assistant) was asked to fill out a form demonstrating "proof" of Tennessee citizenship, the defendants required no such proof from plaintiff's counsel. Instead, defense counsel stated, "we *know* [plaintiff's counsel] Professor Kay to be a citizen of the state of Tennessee based upon the information available on the [Board of Professional Responsibility] website and her long-standing tenure at Vanderbilt." (Doc. No. 14-1 at 2 (emphasis added).) But neither source of evidence to which defense counsel refers provides evidence of citizenship sufficient for knowledge, let alone "proof." The BPR website provides some professional information about attorneys, but it does not provide their personal addresses. *See, e.g.*, BPR of the Supreme Court of Tennessee, Attorney Details, https://www.tbpr.org/attorneys/006630 [perma: https://perma.cc/YBW7-CLLF] (last visited Feb. 20, 2026). And a professor could easily commute from Alabama or Kentucky to teach at Vanderbilt.

[13] By comparison, the Complaint alleges that "Volokh objected to Mr. Boshers' interpretation and application of the Tennessee Public Records Act but was denied once again." (Compl. ¶ 29.) The record does not contain this communication.

14

Nantuna corresponded with Barrett. (*Id.*) Further, the defendants argue, Volokh lacks third-party standing to bring claims on behalf of Nantuna. (*Id.*) Volokh responds that it does not matter who sent the email; it was his request, and he was injured when the defendants denied it. (Doc. No. 17 at 5–6.) And he argues that third-party standing is inapplicable because he is asserting his own interests, not his assistant's. (*Id.*) The defendants respond that Volokh is mistaken: he "cannot establish standing where the public records request at issue was made by someone else, Ms. Nantuna." (Doc. No. 18 at 5.) The defendants further argue that the plaintiff must have prudential standing as well and cannot merely allege a "generalized grievance that is pervasively shared by a large class of citizens." (*Id.* (citation and internal quotation marks omitted).)

In support of their argument, the defendants cite *McDonnell v. United States*, which they describe as holding that "a plaintiff did not have standing to challenge the denial of a FOIA request where he did not sign or submit the request." (*Id.* (citing *McDonnell v. United States*, 4 F.3d 1227 (3d Cir. 1993)).) In *McDonnell*, plaintiffs McDonnell and Rasmussen wanted government records to support research for a book they planned to co-author. 4 F.3d at 1233, 1260. But in that case, "McDonnell's name alone appear[ed] on the requests for records." *Id.* at 1238 (footnote omitted). By contrast, Rasmussen's "name appear[ed] only once in the flurry of requests for information and appeals by McDonnell," in a letter in which McDonnell notes that "Rasmussen . . . and I are researching" the subject of the request. *Id.* at 1238 n.6. The court described the mention of Rasmussen as a "passing reference" that did "not sufficiently identify him with the person making the request to confer on him standing to challenge the denial of the request under the FOIA." *Id.* Because, the court reasoned, "a person whose name does not appear on a request for records has not made a formal request for documents within the meaning of [FOIA]," the Third Circuit found that Rasmussen lacked standing. *Id.* at 1236–39.

15

*McDonnell* is not analogous. In this case, Nantuna's email expressly states that she is writing on behalf of the plaintiff. She writes: "I am writing on behalf of Eugene Volokh . . . . He would like" several documents. (Doc. No. 2-1 at 2.) *Cf. Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, No. 20-12526, 2021 WL 858730, at *4 (E.D. Mich. Mar. 8, 2021), *aff'd*, 21 F.4th 410 (6th Cir. 2021) ("Nowhere do Marx's FOIA requests state that Plaintiff is making the request or that Marx is acting in an official capacity on behalf of Plaintiff."). For purposes of standing, the request for documents was Volokh's.[14] Accordingly, the court will deny the defendants' request to dismiss the complaint under Rule 12(b)(1).

### E.   First Amendment

In *Richmond Newspapers, Inc. v. Virginia*, the Supreme Court held that the public has a First Amendment right to attend criminal trials. 448 U.S. 555, 580 (1980) (plurality opinion); *see also Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 603 (1982). In *Press-Enterprise Company v. Superior Court of California* ("*Press-Enterprise II*"), the Supreme Court applied the "experience and logic test"—first discussed in Justice Brennan's concurring opinion in *Richmond Newspapers*—to determine whether a First Amendment right of public access also applies to preliminary hearings and found that it does. 478 U.S. 1, 13 (1986). Under the experience and logic test, a First Amendment right of access exists "only where: (1) the proceeding or document to

---

[14] The interpretation of the public records request as the plaintiff's is so irresistible that the defendants sometimes refer to it this way in sections of their briefs that do not concern standing. (*Contrast* Doc. No. 18 at 4 ("Plaintiff attempts to circumvent *McBurney* by claiming a fundamental First Amendment right to *the judicial records he requested*[.]"), *with id.* ("Plaintiff argues that he has standing to challenge the response to a public records request *made by another person*[.]"); *see also* Doc. No. 14 at 11 ("There is no allegation that the court proceedings related to the records *requested by Plaintiff* were not open to the public." (emphasis added)); Doc. No. 18 at 3 (same); *id.* at 4 (referencing the "denial of *Plaintiff's request* for records" (emphasis added)); *see also* Email from defense counsel to plaintiff's counsel, Doc. No. 14-1 at 2 (referring to "documents *requested by your client*" (emphasis added)).) Intervenor the State of Tennessee also interprets the request as Volokh's. (Doc. No. 22 at 1 ("Plaintiff . . . allege[s] that the denial of *his records request by Defendants* . . . .").)

which access is sought has historically been open to the press and general public, and (2) public access plays a significant positive role in the functioning of the particular process in question." *In re Morning Song Bird Food Litig.*, 831 F.3d 765, 777 (6th Cir. 2016) (citing *In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012)).

The Sixth Circuit has extended the experience and logic test to civil matters. *Accord Fair Fin.*, 692 F.3d at 429 (6th Cir. 2012) ("The test has been used, for example, to determine whether there is a right of access to civil trials, administrative hearings, deportation proceedings, and municipal planning meetings." (citing *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002) (collecting cases))); *see also United States v. Miami Univ.*, 294 F.3d 797, 823–24 (6th Cir. 2002) (student disciplinary records); *Courthouse News Serv. v. O'Shaughnessy*, 663 F. Supp. 3d 810, 815–19 (S.D. Ohio 2023) (civil complaints). The Sixth Circuit has also applied the test to requests to access documents in the criminal context. *See, e.g.*, *United States v. Kincaide*, 119 F.4th 1074, 1076 (6th Cir. 2024) (plea supplement); *In re Morning Song*, 831 F.3d at 777 (objections to presentence reports); *Fair Fin.*, 692 F.3d at 430–33 (documents involved with the issuing and execution of a search warrant).

While the court must weigh experience and logic, two "complementary considerations," *Press-Enterprise II*, 478 U.S. at 8, the Supreme Court "has not specified how much weight courts should give each prong." *N.Y. C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 301 (2d Cir. 2012). When the qualified First Amendment right of access attaches to a document or proceeding, "it can 'be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Miami Univ.*, 294 F.3d at 821 (quoting *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)).

17

At issue in this case is whether civil petitions for orders of protection and related documents pass the experience and logic test. The defendants do not argue that, if they do, the qualified right of access can be overcome.

    *1.    The parties' arguments*

The parties discuss at some length whether Volokh has a First Amendment right to access the records at issue. (Doc. No. 14 at 7–15; Doc. No. 17 at 9–15; Doc. No. 18 at 1–4.) First, the defendants argue that the experience and logic test is "[i]ll-[s]uited" to this case because cases in which courts typically apply it concern proceedings or documents closed to everyone; in this case, by contrast, "the proceeding was open to the public and the records are available to Tennessee citizens." (Doc. No. 14 at 13.)[15] The court agrees with the defendants that this case is anomalous but also agrees with the plaintiff—that his "right of access is not extinguished simply because access might once have been possible or because others can exercise their right." (Doc. No. 17 at 9 (citation omitted).) That is, the defendants' position appears to be that Volokh would have a better case if *no one* could access the records he seeks. In any case, the defendants point to no alternative test to determine whether a First Amendment right of access attaches to the documents at issue. Furthermore, as the Sixth Circuit has recently reaffirmed, "In First Amendment right-of-access cases, we apply the experience-and-logic test to requests for information tied to adjudicatory proceedings." *McCaleb v. Long*, 152 F.4th 728, 734 (6th Cir. 2025), *petition for cert.*

---

[15] The defendants rely on *United States v. Beckham* to argue that Volokh does not have a First Amendment right to access the court documents he seeks because he could have attended the related court hearing. (Doc. No. 18 at 2–3 (citing *United States v. Beckham*, 789 F.2d 401 (6th Cir. 1986)).) In *Beckham*, the Sixth Circuit held that members of the press did not have a First Amendment right to make copies of audio recordings (and their transcripts) played during a criminal trial they were permitted to attend. 789 F.2d at 403. But Volokh does not seek copies of evidence presented during a hearing he theoretically could have attended; he seeks documents that, according to the defendants, he has never had a right to access.

*filed*, (Feb. 19, 2026) (No. 25-984). The defendants do not argue—nor could they plausibly argue—that Volokh does not seek information tied to an adjudicatory proceeding. The experience and logic test applies.

However, no party sufficiently briefs the application of the experience and logic test, on which the 12(b)(6) motion hangs, and therefore the court will order further briefing. The parties respectively devote roughly one paragraph to the application of each of the test's factors to this case. (Doc. No. 14 at 13–15; Doc. No. 17 at 13.) The court will briefly discuss the experience and logic factors to highlight what the parties should discuss in the additional briefing the court will order.

     *i.*     *Experience*

"Experience" asks "whether the proceeding or material has historically been open to the press and the general public." *Kincaide*, 119 F.4th at 1077–78 (quotation marks and citations omitted).

Plaintiff

The plaintiff states that experience and logic "support[] a finding that the First Amendment right of public access attaches to civil judicial records." (Doc. No. 17 at 12.) But the plaintiff then devotes only one paragraph to support this contention as to experience, in which he argues that, "because the open courtroom is . . . a 'fundamental feature' of the American judicial system, the experience prong is satisfied." (Doc. No. 17 at 13 (quoting *Brown & Williamson*, 710 F.2d at 1177).) He states that the right of access to court records dates to 14th Century England and the American colonies and that courts have recognized a "general right to inspect and copy public records and documents." (*Id.* at 13 (citations omitted).)

But the plaintiff's broad statements do not help the court determine whether a qualified First Amendment right of access applies to orders of protection and related documents, in

19

particular. "Statements such as 'throughout our history, the open courtroom has been a fundamental feature of the American judicial system,' show the importance of court access in general, but they do not let us skip over the First Amendment inquiry." *Stevens v. Mich. State Ct. Admin. Off.*, No. 21-1727, 2022 WL 3500193, at \*7 (6th Cir. Aug. 18, 2022) (quoting *Brown & Williamson*, 710 F.2d at 1177). As the Sixth Circuit has explained, the "First Amendment provides a presumptive right of access to some 'documents and records that pertain to a proceeding' in court, but *that is because they pass the Supreme Court's 'experience and logic' test*." *Kincaide*, 119 F.4th at 1077 n.3 (quoting *Applications of Nat'l Broadcasting Co., Inc. v. Presser*, 828 F.2d 340, 344 (6th Cir. 1987) (emphasis added)).

Rather, the experience and logic test requires the court to evaluate the *particular* proceeding or record at issue. *See McCaleb*, 152 F.4th at 732 ("If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." (quoting *Press-Enterprise II*, 478 U.S. at 9)); *see also Kincaide*, 119 F.4th at 1077–78 ("We ask . . . whether 'public access plays a significant positive role in the functioning of *the particular process in question*.'" (quoting *Press-Enterprise II*, 478 U.S. at 8) (emphasis added)). That is, "[t]o determine whether the First Amendment guarantees a qualified right of access to a particular category of court records, courts apply the 'experience and logic' test." *Bristow v. Forlini*, No. 22-12350, 2023 WL 3095554, at \*3 (E.D. Mich. Apr. 26, 2023). This accords with the way courts have applied the test: to specific proceedings or records.[16] The

---

[16] *See, e.g.*, *Kincaide*, 119 F.4th at 1076 (plea supplement); *In re Morning Song*, 831 F.3d at 777 (objections to presentence reports); *Fair Fin.*, 692 F.3d at 430–33 ("[W]e conclude that it is appropriate to apply the test here in considering whether there should be access to documents involved with the issuing and execution of a search warrant."); *Bristow v. Forlini*, No. 22-12350, 2023 WL 3095554, at \*3–5 (E.D. Mich. Apr. 26, 2023) (divorce complaints); *accord In re Opinions & Ords. of this Ct. Addressing Bulk Collection of Data Under Foreign Intel. Surveillance Act*, No. MISC. 13-08, 2020 WL 897659, at \*8 n.10 (Foreign Intel. Surv. Ct. Feb. 11, 2020) (noting

plaintiff's analysis says nothing about the history of orders of protection and related documents.[17]

In his further briefing, the plaintiff must address the experience factor at a greater level of specificity and in addition must address the issues the court discusses below, regarding the defendants' arguments.

<u>Defendants</u>

The defendants argue that Supreme Court cases analyzing the "experience" factor "point to a tradition of public access dating at least to the early nineteenth century" and that "Sixth Circuit precedent has demanded 'a long-established and widespread tradition of public access, though not necessarily one dating to the Founding era.'" (Doc. No. 14 at 13–14 (first citing, and then quoting, *Kincaide*, 199 F.4th at 1078).) And, according to the defendants, because orders of protection were first enacted in the 1970s, and in Tennessee in 1979, they have not enjoyed a long-established history of openness. (*Id.*) Moreover, they argue, because the TPRA's citizenship requirement has been in effect since 1957, Tennessee orders of protection have always been restricted from non-citizens. (*Id.* at 14.)

While the defendants acknowledge that the experience inquiry is not limited to any one jurisdiction, they also argue without elaboration that such a limitation is "appropriate in these unique circumstances where the document requested is broadly available to Tennessee citizens and the Supreme Court has upheld a state public records law with a citizenship requirement." (*Id.* at

---

that courts apply the experience and logic test to "the particular type of judicial proceeding or document to which a First Amendment right of access has been asserted" and collecting cases).

[17] The court acknowledges, however, that, "[h]ow broadly or narrowly to apply the experience-and-logic test has sometimes been a vexing question." *In re Opinions & Ords.*, 2020 WL 897659, at *7; *accord Dhiab v. Trump*, 852 F.3d 1087, 1106–07 (D.C. Cir. 2017) ("[C]hoices as to level of generality for the relevant proceedings (and between proceedings and documents), and the scope of the relevant historical inquiry, can easily be decisive . . . . Yet we have little guidance from the Supreme Court, or indeed any other, as to how to make those choices.").

21

14 n.5 (first citing *Kincaide*, 119 F.4th at 1078; and then citing *McBurney*, 569 U.S. at 226).) In *Kincaide*, the court stated, "We do not limit our focus to the tradition of any particular jurisdiction; rather we seek an 'established and widespread tradition' of open access to the '*type or kind* of [proceeding or record] throughout the United States.'" *Kincaide*, 119 F.4th at 1078 (quoting *El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147, 150 (1993) (alteration in *Kincaide*)); *accord El Vocero de P.R.*, 508 U.S. at 150–51 ("The established and widespread tradition of open preliminary hearings among the States was canvassed in *Press-Enterprise* and is controlling here.").

The defendants appear to argue that, when evaluating whether orders of protection have historically been open to the general public, the relevant inquiry is whether orders of protection *in Tennessee* have historically been available to *non-citizens* of Tennessee. But the defendants do not explain why, contrary to the Sixth Circuit's instruction in *Kincaide*, limiting the inquiry in the way they say is appropriate.[18] Nor do the defendants explain why, even if the court were to limit its historical inquiry to Tennessee, such a limitation would support the defendants' position, when they contend that the documents Volokh seeks are "open and available to over 7 million Tennessee citizens . . . and to any others who simply ask a Tennessee citizen to make a request on their behalf." (Doc. No. 14 at 11.) The defendants should explain why the relevant historical inquiry should be limited to Tennessee and, assuming the court limits the inquiry, how such a limitation advances its argument. Further, the defendants should explain how this argument comports with

---

[18] *Accord Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 545 (D. Vt. 2014) ("[A]n approach that considers only the past practices of one jurisdiction regarding a particular type of government proceeding would lead to 'gross disparities in the content of the First Amendment rights recognized' in different jurisdictions and would 'act as a powerful incentive to public officials to exercise their legally permissible discretion in favor of secrecy.'" (quoting *Cap. Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1175 (3d Cir. 1986))).

22

their apparent contention that Volokh might have secured the documents had he only petitioned the Circuit Court. (Doc. No. 18 at 4.)

Further, both parties should address what is required to show that certain documents have been "historically" open. As the defendants note, the Sixth Circuit has recently stated that the experience prong "demand[s] a long-established and widespread tradition of public access, though not necessarily one dating to the Founding era." *Kincaide*, 119 F.4th at 1079. (*See* Doc. No. 14 at 13–14 (quoting *Kincaide*, 119 F.4th at 1078).) But the Sixth Circuit has not stated *how long* a history is necessary. Indeed, the Sixth Circuit in *Kincaide* noted that, in *Detroit Free Press*, it had "surmised that 'a brief historical tradition might be sufficient to establish a First Amendment right of access where the beneficial effects of access to that process are overwhelming and uncontradicted.'" 119 F.4th at 1079 (quoting *Detroit Free Press*, 303 F.3d at 701). In *Detroit Free Press*, however, the court did not need to "apply that proposition," because deportation proceedings—at issue there—dated to 1882. *Id.* In *Detroit Free Press*, the Sixth Circuit noted that neither the Supreme Court nor the Sixth Circuit has required a history of openness dating from the Bill of Rights. *Detroit Free Press*, 303 F.3d at 700. Among the cases the Sixth Circuit cited for this proposition is *Applications of National Broadcasting Company, Inc. v. Presser*, which the court in *Detroit Free Press* described as "finding First Amendment right of access while reviewing history from 1924–1984"). *Id.* (citing *Nat'l Broadcasting*, 828 F.2d at 344). *National Broadcasting* concerned the media's access to sealed records regarding the disqualification of a judge in a criminal case. There, the court wrote, "[w]e have surveyed reported Sixth Circuit cases involving the disqualification of judges from 1924 to 1984 and have not found one in which the proceedings were closed or the record sealed." *Nat'l Broadcasting*, 828 F.2d at 344. Thus, the court found, "there is clearly a tradition of accessibility to disqualification proceedings." *Id.*

23

Finally, both parties should discuss whether any historical analogues to orders of protection are relevant. In *Stevens v. Michigan State Court Administrative Office*, the plaintiff sought access to court audio recordings. 2022 WL 3500193, at *2. Applying the experience and logic test, the court observed that audio recordings had not been invented when our country adopted the First Amendment. *Id.* at *6. However, the court wrote, "[t]hat does not settle the matter," because courts "often consider historical analogues when applying well-established doctrines to novel technologies." *Id.* (citations omitted).

### ii. Logic

"Logic" asks whether public access plays a significant positive role in the functioning of the particular process in question. Again, the parties each devote one paragraph to this factor and provide insufficient argument to allow the court to determine who is right. (Doc. No. 14 at 14–15; Doc. No. 17 at 13.)

As with the "experience" factor, the plaintiff writes broadly about the value of public access to civil judicial records. (Doc. No. 17 at 13 (citations omitted).) The plaintiff needs to discuss orders of protection, in particular. *Accord Detroit Free Press*, 303 F.3d at 701 ("Analysis is not advanced by rhetorical statements that all information bears upon public issues; *what is crucial in individual cases is whether access to particular government process is important in terms of that very process*." (quoting *Richmond Newspapers*, 448 U.S. at 589 (Brennan, J., concurring) (emphasis in *Detroit Free Press*))).

Meanwhile, the defendants argue that "[n]o significant . . . benefits can be gleaned by making the records open to non-citizens." (Doc. No. 14 at 15.) The defendants need to put forward a more focused argument—supported by caselaw—for why the court should limit its inquiry to

24

the role access for *non-Tennesseans* would play regarding *Tennessee* orders of protection, rather than the positive role that public access plays in the order of protection process generally.[19]

### F. The Privileges and Immunities Clause

The plaintiff also alleges that the defendants' denial of his request violates the Privileges and Immunities Clause. (Compl. ¶¶ 38–46.) The Clause provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. As the Sixth Circuit has explained, "The point of the Clause is to 'place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.'" *Lebamoff Enters. Inc. v. Whitmer*, 956 F.3d 863, 875 (6th Cir. 2020) (quoting *McBurney*, 569 U.S. at 228). But the Clause only prohibits states from denying non-residents "fundamental" rights they provide to their own residents. *Garber v. Menendez*, 888 F.3d 839, 845 (6th Cir. 2018) (citing *McBurney*, 569 U.S. at 227–28). Thus, to make out a claim under the Privileges and Immunities Clause, the plaintiff must show that he has a fundamental right to access the documents he seeks.

The plaintiff argues that First Amendment rights are fundamental, that he has a First Amendment right to access the documents he seeks, and that therefore the defendants' citizenship-based denial of his access to those documents violates the Privileges and Immunities Clause. (Doc. No. 17 at 16.) Thus, the plaintiff's claim under the Privileges and Immunities Clause depends on

---

[19] While the plaintiff may not be representative of non-citizens who would seek access to orders of protection, Volokh seeks access to the records to aid his research (Compl. ¶ 45; Doc. No. 17 at 3 n.1), which has been cited not only by the Supreme Court of the United States, but also by the Tennessee Supreme Court. *See Charles v. McQueen*, 693 S.W.3d 262, 275 (Tenn. 2024) (first citing Eugene Volokh, *Cheap Speech and What it Has Done: (Greater) Equality and Its Discontents*, 54 U.C. Davis L. Rev. 2303, 2305–06 (2021); and then citing Eugene Volokh, *Cheap Speech and What It Will Do*, 104 Yale L.J. 1805, 1848 (1995)). The defendants may want to address why it is not valuable to provide access to non-citizens, including scholars, who may nevertheless have something helpful to say that bears on Tennessee law.

25

the success of his First Amendment claim.[20] In response, the defendants first argue that, because they have not violated the First Amendment, they have not violated the Privileges and Immunities Clause. (Doc. No. 14 at 6.)

Furthermore, the defendants rely on *McBurney*, which concerned a provision in the Virginia Freedom of Information Act that provided that "all public records shall be open to inspection and copying by any citizens of the Commonwealth," but granted no such right to non-Virginians. *McBurney v. Young*, 569 U.S. 221, 224 (2013) (citation omitted). Two non-Virginians sought non-judicial records through Virgina's FOIA, but their requests were denied. *Id.* at 224–25. They alleged that the citizenship requirement in Virgina's FOIA violated the Privileges and Immunities Clause, but the Court disagreed. Relevant here, the Court "reject[ed] petitioners' sweeping claim that the challenged provision of the Virginia FOIA violates the Privileges and Immunities Clause because it denies them the right to access public information on equal terms with citizens of the Commonwealth." *Id.* at 232. It continued, "there is no constitutional right to obtain all the information provided by FOIA laws." *Id.* (citing *Houchins v. KQED, Inc.,* 438 U.S. 1, 14 (1978)). On this basis, the defendants argue that they have not violated the Privileges and Immunities Clause. (Doc. No. 14 at 5–6.)

The plaintiff distinguishes *McBurney* on the basis that it concerned access to executive records, not judicial records, and the plaintiff does not take issue with TPRA's citizenship requirement as applied to certain executive records, which the Sixth Circuit upheld soon after the Supreme Court decided *McBurney*. (Doc. No. 17 at 17 (citing *Jones*, 531 F. App'x at 710).) Indeed,

---

[20] The plaintiff also makes a passing reference to his right to access the courts, but, without more, the court does not construe the Complaint as alleging that the defendants have abridged that right. (*See* Doc. No. 17 at 16–17 ("[T]he records requested here implicate the First Amendment right of access to the courts—a constitutional right that falls squarely within the protections of the Privileges and Immunities Clause." (citations omitted)).)

26

in *Jones*, the Sixth Circuit found that the right to access "any public document" does not "fall within the scope of the Privileges and Immunities Clause." *Jones*, 531 F. App'x at 710 (citing *McBurney*, 569 U.S. at 232–34). The defendants do not meaningfully engage with this distinction or respond to the plaintiff's analysis of *McBurney*.

*First* the defendants broadly construe the holding in *McBurney*. (*See* Doc. No. 18 at 4 ("[T]he provision of Virginia's [FOIA] restricting access to state records to state citizens did not violate the Privileges and Immunities Clause.").) But *McBurney* did not hold that *any* restriction of public records from non-citizens is constitutional. *Accord Jones*, 531 F. App'x at 710 (Stranch, J., concurring) ("I do not read *McBurney* as necessarily foreclosing the application of the Privileges and Immunities Clause to each and every right of access to public information."). In their further briefing, the defendants should explain *McBurney*'s relevance to this case.

*Second*, the defendants state, "just as the plaintiffs in *McBurney* had access to judicial records through other methods"—which the Supreme Court considered in its analysis, *see McBurney*, 569 U.S. at 224—"Plaintiff could seek the records at issue through a petition to the court that decided the matter as opposed to a public records request[.]" (Doc. No. 18 at 4.) The defendants should clarify whether their position is that non-citizens are entitled to judicial records, so long as they seek them by petition, and how that bears on the Privileges and Immunities analysis.

## V.      CONCLUSION

For the forgoing reasons, the Motion to Dismiss will be denied in part and reserved in part, pending further briefing by the parties. Specifically, the court will deny the defendants' Motion to Dismiss for lack of jurisdiction, under Rule 12(b)(1). And the parties will be ordered to submit simultaneous briefs addressing the issues the court has delineated above. The briefs need not restate the facts or procedural history of the case, provide standards of review, or summarize this Memorandum.

27

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

28